Filed 4/8/22  P. v. Mims CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LAMONT MIMS et al.,<br><br>    Defendants and Appellants. | H045591<br>(Santa Clara County<br>Super. Ct. No. C1365457) |

Defendants Lamont Mims, Anthony Mims, Darrell Samuels, Jr., and Randell Taylor appeal after a jury convicted them of various offenses related to the armed burglary of an occupied home.  Anthony Mims contends the trial court erred by denying his multiple requests to replace appointed counsel.  He and the other defendants also challenge several aspects of their sentences.  We find no error affecting defendants' convictions, but they are entitled to the benefit of newly enacted legislation giving the trial court discretion to strike certain sentencing enhancements.  We will reverse the judgment and remand for that limited purpose.[1]

## I.  BACKGROUND

Defendants entered a house in San Jose through a bedroom window a little after 11:00 on a September morning.  They were armed with two guns.  A neighbor saw them and called 911.  A woman was in the bedroom defendants used as an entry point; one of

---

[1] Defendant Darrell Samuels, Jr. also petitioned for a writ of habeas corpus (case No. H049156).  We previously ordered the petition considered with this appeal; we resolve it by separate order filed this day.

them pointed a gun at her and pulled her into another room, demanding money. Two young children and their grandmother were also in the house. Going room to room, defendants gathered a laptop, cell phone, and other items. Part of the house was being used to grow marijuana. Defendants tried to take the marijuana plants by ripping them out of the pots.

A sheriff's deputy patrolling nearby was dispatched to the burglary in progress. He arrived seconds later to find defendant Randell Taylor coming out the front door with his arms full of electronics. Taylor retreated into the house and fled out the back with the other defendants. All were apprehended soon after, except for Anthony Mims. He was arrested after his name was found on the rental agreement for a pick-up truck parked outside the burglarized house.

Defendants were charged with first degree robbery in an inhabited place acting in concert (Pen. Code, §§ 211, 213, subd. (a)(l)(A)); attempted first degree robbery in an inhabited place acting in concert (Pen. Code, §§ 664, 211, 213, subd. (a)(l)(A)); first degree burglary (Pen. Code, §§ 459, 460, subd. (a)); first degree robbery in an inhabited place (Pen. Code, §§ 211, 212.5, subd. (a)); attempted robbery in an inhabited place (Pen. Code, §§ 664, 211, 212.5); kidnapping to commit robbery (Pen. Code, § 209, subd. (b)(1)); and active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)). The information also alleged firearm and gang enhancements. (Pen. Code, §§ 12022.53, subds. (b), (e)(1), 186.22, subds. (b)(1)(C), (b)(4). As to Anthony Mims, the information alleged a prior strike conviction, a prior serious felony, and four prior prison terms. (Pen. Code, §§ 667, subds. (a)(1), (b)-(i) & 1170.12; 667.5, subd. (b).) As to Darrell Samuels, it alleged a prior prison term. (Pen. Code, § 667.5, subd. (b).)

Defendants were tried together by jury. The two women who were home during the break in testified and identified defendants as the perpetrators. A police officer testifying as an expert on criminal street gangs opined that defendants were members of a San Francisco-based gang called Double Rock and that they committed the crimes to

2

benefit that gang.  A defense expert disagreed, and testified there is no Double Rock gang.

The jury convicted the defendants of robbery in concert, attempted robbery in concert, burglary, robbery, and attempted robbery.  It acquitted defendants on the kidnapping charge but found each guilty of the lesser included offense of false imprisonment.  It found true the allegation that a firearm was used in committing the burglary.  The jury did not reach a verdict on the active gang participation charge for each defendant and did not reach a verdict on the gang enhancement allegations and remaining firearm allegations; on those counts and allegations the trial court declared a mistrial.  In a bifurcated proceeding, the court found true that Anthony Mims had a prior strike conviction, a prior serious felony conviction, and had served four prior prison terms.

Facing retrial on the charge and enhancements on which the jury had been unable to reach a verdict, defendants agreed to a negotiated disposition.  The district attorney amended the information to allege a gang enhancement under Penal Code section 186.22, subdivision (b)(1) (a 10-year sentence enhancement), rather than under section 186.22, subdivision (b)(4) (which carries an indeterminate life term).  Defendants each pleaded no contest to active gang participation, admitted that the burglary and robbery counts were committed to benefit the gang, and admitted the remaining firearm allegations related to those counts.  Darrell Samuels admitted having served a prior prison term.

Lamont Mims, Randell Taylor, and Darrell Samuels were each sentenced to 16 years and eight months in prison.  Anthony Mims was sentenced to 29 years in prison.

## II.    DISCUSSION

### A.    NO ABUSE OF DISCRETION IN NOT REPLACING APPOINTED COUNSEL

Anthony Mims asked on three occasions that his appointed counsel be replaced. He contends the trial court abused its discretion by denying those requests.  Because the

3

trial judge is in the best position to determine whether protecting the right to counsel requires replacing an appointed attorney, the law gives the trial court discretion to make that assessment, which we review for abuse of discretion. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085.) We will not disturb the trial court's decision unless it was arbitrary, irrational, or outside the confines of what the law allows. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.)

A defendant who asserts inadequate representation by appointed counsel must be allowed to explain the basis for that assertion and relate specific instances of deficient performance. (*People v. Marsden* (1970) 2 Cal.3d 118, 124.) Appointed counsel should only be replaced when the defendant shows either that the current attorney is not providing adequate representation, or there is such an irreconcilable conflict between the defendant and counsel that inadequate representation is likely to result. (*People v. Memro* (1995) 11 Cal.4th 786, 857.)

The record does not show an abuse of discretion by the trial court in finding neither a clear showing of inadequate representation nor an irreconcilable conflict between attorney and client. The first time Mims asked that his counsel be replaced, he asserted the attorney did not seem prepared to go forward, having only recently taken over the case from a previous lawyer, and that there were motions that should have been made but had not been. Mims also complained that his counsel had not subpoenaed certain witnesses helpful to the defense and that counsel continually tried to discuss an already rejected plea bargain, urging it would be better to accept that offer than go to trial. Counsel assured the court he was ready for trial, in large part because of the significant preparation that had already been conducted by his predecessor. The court agreed he seemed adequately prepared.

Mims made a second request to replace counsel during jury selection. Mims told the court that during a meeting at the jail, counsel referred to him using a racial epithet and told him he was dumb if he did not take the plea bargain, and he would make sure

4

Mims got life in prison if he went to trial.  Counsel denied making any such statements.  The court expressly resolved that credibility conflict in counsel's favor.

During trial, Mims requested a third time that his counsel be replaced.  He asserted his attorney was not adequately explaining things to him and was not asking witnesses certain questions that Mims wanted asked.  Counsel responded that he was communicating with Mims and had strategic reasons for the way he was questioning witnesses.

Denying each request to replace appointed counsel appears to have been the product of rational decision making and was not arbitrary or unreasonable—particularly given that strategic disagreements and a failure to accede to a defendant's demands on tactical matters cannot alone demonstrate inadequate representation.  (*People v. Barnett*, *supra*, 17 Cal.4th 1044, 1086.)  On each request, the court allowed Mims to explain why he felt counsel should be replaced and invited the attorney to respond.  In evaluating whether Mims was being adequately represented, the trial court had the benefit of observing firsthand counsel's performance and demeanor toward his client.  The attorney's alleged use of a racial epithet and purported statement that he would make sure Mims got life in prison are concerning, to be sure.  But the trial court expressly found those statements were not made.  We are not in a position to second guess the trial court's credibility determination; to the contrary, we must defer to it.  (*People v. Smith* (1993) 6 Cal.4th 684, 696.)

Having reviewed the entire record, we are satisfied that Anthony Mims did not show his right to counsel would be substantially impaired without a new attorney.  The trial court therefore did not abuse its discretion in denying the multiple requests to replace appointed counsel.  (See *People v. Webster* (1991) 54 Cal.3d 411, 435 [no abuse of discretion unless defendant has shown substantial impairment of right to counsel].)

5

**B.** **FALSE IMPRISONMENT SENTENCE DID NOT VIOLATE PENAL CODE SECTION 654**

Randell Taylor contends the trial court violated Penal Code section 654 by imposing a consecutive eight-month sentence for his false imprisonment conviction in addition to the sentence imposed for robbery. Section 654 prohibits multiple punishments for the same conduct. When a defendant has engaged in an act that violates more than one criminal statute, he or she may be convicted of multiple offenses but punished for only one. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) The rule applies not only where there was a single act in the ordinary sense, but also where an indivisible course of conduct violates multiple statutes. (*People v. Brown* (1958) 49 Cal.2d 577, 590–591.) Taylor's argument is that the conduct underlying his false imprisonment conviction—moving a robbery victim to another room in the house—was part of the larger course of conduct such that he cannot be separately punished for false imprisonment.

We agree that the false imprisonment in this case was incidental to robbery and part of the same course of conduct. (See *People v. Williams* (2017) 7 Cal.App.5th 644, 672.) But imposing sentence for false imprisonment did not violate Penal Code section 654 because Taylor was convicted of committing a violent crime against more than one victim. When an indivisible course of conduct results in an act of violence against multiple people, section 654 does not apply. (*People v. Oates* (2004) 32 Cal.4th 1048, 1063.) The multiple victim exception permits one unstayed sentence per victim for each violent crime committed with a single objective. (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1781.)

Taylor was convicted of robbery in concert against victim 1; attempted robbery in concert against victim 2; burglary against both victim 1 and victim 2; robbery against both victim 1 and victim 2; attempted robbery against victim 2; and false imprisonment against victim 2. He argues the multiple victim section is inapplicable because it is

6

unclear whether the trial court imposed sentence on a robbery count involving the same victim as the false imprisonment (i.e., sentence imposed for the robbery against victim 2, and for false imprisonment of the same victim).

But that possibility is not the relevant inquiry, which is whether Taylor was found to have committed violent acts against multiple people. If he was, he can be punished in two ways even if the acts were part of an indivisible course of conduct. That is because a defendant who commits an act of violence harming multiple people is considered more culpable than someone who harms only one person. The greater culpability precludes application of Penal Code section 654. (*People v. Garcia*, *supra*, 32 Cal.App.4th at p. 1782.) The conduct for which Taylor was convicted involved acts of violence against more than one person, and Penal Code section 654 therefore does not prohibit imposition of sentence for the false imprisonment charge.

## C.  AN ABILITY TO PAY HEARING WAS NOT REQUIRED

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1167 (*Dueñas*), defendants contend the trial court erred by imposing certain fines and fees without first conducting a hearing to determine their ability to pay. The court of appeal in *Dueñas* found a constitutional right to such a hearing, which is the subject of competing views in the appellate courts and in this court. The California Supreme Court has granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, to determine whether an ability to pay hearing is required before imposing fines and fees.

We need not decide the issue here because this case is clearly distinguishable from *Dueñas*. The defendant in *Dueñas* presented evidence that she was unable to pay even minimum fines and fees: She was unable to work because of a disability, she had two children and used all the money she received from government assistance to take care of them, and she was unable to afford even basic necessities for her family. (*Dueñas*, *supra*, 30 Cal.App.5th 1157 at p. 1161.) The record here does not contain evidence of such

7

extreme financial hardship for any of the defendants.  Indeed, although *Dueñas* had not been decided at the time of sentencing, none of the defendants objected to the imposition of fines and fees nor suggested any inability to pay them.  *Dueñas* therefore does not compel the conclusion that the trial court erred by imposing fines and fees without an ability to pay hearing.  (See *People v. Roberts* (2021) 65 Cal.App.5th 469, 482 .)

**D.    REMAND IS REQUIRED FOR THE TRIAL COURT TO EXERCISE DISCRETION ON THE FIREARM ENHANCEMENTS**

Each defendant's sentence includes an enhancement for firearm use under Penal Code section 12022.53.  Effective January 1, 2018, that statute was amended to allow trial courts to strike or dismiss the enhancement in the interest of justice.  (See SB 620 (Stats. 2017–2018) ch. 682, §§ 1, 2.)  The amendment is ameliorative and applies to all cases not yet final on appeal.  (*People v. Garcia* (2018) 28 Cal.App.5th 961, 972.)  Because the judgment in this case is not yet final, the new statute applies and we will remand the matter to allow the trial court to exercise its newly conferred discretion and decide whether to strike the firearm enhancements in the interest of justice.

The Attorney General concedes the issue for all defendants except Anthony Mims.  As to Anthony Mims, the Attorney General argues remand is not required because the trial court clearly indicated at the time of sentencing that it would not have stricken the enhancement even if it had the ability to do so.  Pointing to the trial court's finding of aggravating factors and its refusal to strike a prior conviction, the Attorney General argues that "the court clearly intended to impose a harsher sentence on Anthony Mims than the others based on history [*sic*] of continuous criminal activity."  Although the trial court did impose a harsher sentence on Anthony Mims, the other defendants' sentences may now be reduced on remand, and the record does not foreclose the possibility that the trial court would make a corresponding change to Anthony Mims's firearm enhancement if given the opportunity to do so.  (See *People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110.)  We will therefore remand the matter for the trial court to decide whether to

8

impose the Penal Code section 12022.53 firearm enhancement as to all defendants, including Anthony Mims.

**E.     REMAND IS REQUIRED FOR THE TRIAL COURT TO EXERCISE DISCRETION ON THE PRIOR SERIOUS FELONY ENHANCEMENT FOR ANTHONY MIMS**

Anthony Mims's sentence includes an enhancement under Penal Code section 667, subdivision (a)(1) for a prior serious felony conviction.  Effective January 1, 2019, that statute was amended to give trial courts discretion to strike the enhancement in the interest of justice.  (SB 1393 (Stats. 2017–2018) ch.1013, § 2.)  The Attorney General concedes the statute applies retroactively to all judgments not yet final, but again argues resentencing is not required because the record clearly indicates the trial court would not have stricken the enhancement.  As with the record regarding the firearm enhancement, we do not see a clear enough indication that the trial court would not make a different sentencing choice if given discretion to do so.  We will therefore remand the matter for the trial court to decide whether to strike the Penal Code section 667, subdivision (a)(1) enhancement as to Anthony Mims.

**F.     SAMUELS'S PRIOR PRISON TERM ENHANCEMENT MUST BE STRICKEN**

The judgment as to Darrell Samuels includes a finding that he served a prior prison term, which at the time of sentencing supported an enhancement under former Penal Code section 667.5.  (The trial court struck the one-year punishment for that enhancement.)  Effective January 1, 2020, Penal Code section 667.5 was amended to restrict the enhancement to prior prison terms imposed for specified sexually violent offenses.  (SB 136 (Stats. 2019) ch. 590 § 1.)  Samuels's prison prior does not qualify for the enhancement under the amended statute, which applies retroactively, all of which the Attorney General concedes.  We will order the trial court to vacate the finding under Penal Code section 667.5 that Darrell Samuels served a prior prison term.

9

### III.    DISPOSITION

The judgment is reversed.  The case is remanded with directions to vacate the finding under Penal Code section 667.5 that Darrell Samuels served a prior prison term. The trial court is further directed to decide, as to each defendant, whether the firearm sentencing enhancement under Penal Code section 12022.53 should be dismissed in the interest of justice; and to decide, as to Anthony Mims, whether the Penal Code section 667, subdivision (a)(1) prior serious felony enhancement should be dismissed in the interest of justice. If the court decides to dismiss an enhancement for any defendant, that defendant shall be resentenced accordingly; otherwise, the court shall reimpose the defendant's original sentence.

_____
Grover, J.

**I CONCUR:**


_____
Elia, J.

H045591 – *People v Mims et al.*

Greenwood, P. J., Concurring and Dissenting:

I concur in my colleagues' analysis of appellants' claims, and agree that the judgment should be reversed and the matter remanded to the trial court as specified in the disposition.

I respectfully dissent because I part with their failure to find error where the trial court imposed fines and fees without an ability-to-pay hearing. I believe that *People v. Dueñas* (2019) 30 Cal.App.5th 1157 was decided correctly and thus conclude that the trial court violated appellants' federal constitutional right to due process by imposing fines and fees without first assessing the ability of each appellant to pay them. (See *People v. Santos* (2019) 38 Cal.App.5th 923.) As appellants noted, courts of appeal have issued conflicting opinions on the merits of *Dueñas*, this ground has been trod many times, and the issue is before the Supreme Court. (*People v. Kopp* (2019) 38 Cal.App.5th 47; review granted Nov. 13, 2019 S257844.) In the interim, as the judgment here will be reversed and the matters remanded in any event, the trial court should conduct an ability-to-pay hearing with respect to the fines and fees previously imposed.

1

_____
Greenwood, P. J.

People v. Mims, et al.
No. H045591